**2020 UT App 173**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROBERT ALONZO PERAZA,
Appellant.

Opinion
No. 20160302-CA
Filed December 24, 2020

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 131402387

Douglas J. Thompson, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1    This case is before us on remand from our supreme court's decision in *State v. Alonzo Peraza* (*Peraza II*), 2020 UT 48, 469 P.3d 1023, directing this court "to consider under the correct legal standard" "whether Peraza established that he was prejudiced by the trial court's denial of his motion for a continuance" and to "address any other remaining claims." *Id.* ¶¶ 60, 63. We conclude Peraza has established that the district court's decision prejudiced him. We therefore vacate his

convictions and remand this case to the district court for further proceedings, including potentially a new trial.[1]

¶2     Robert Alonzo Peraza was convicted of four counts of sodomy on a child (Child).[2] On appeal to this court, Peraza contended the district court erred by allowing the State to present testimony by an expert (Expert) that had the effect of bolstering Child's testimony and by denying his motion to continue the trial. *See State v. Peraza* (*Peraza I*), 2018 UT App 68, ¶¶ 23–24, 427 P.3d 276. We concluded the court erred on both counts and, on that basis, vacated Peraza's convictions and remanded for a new trial. *Id.* ¶ 49.

¶3     The State petitioned for certiorari, which our supreme court granted. As relevant here, the State's petition did not contest this court's "determination that the denial of the continuance was error." *See Peraza II*, 2020 UT 48, ¶ 51. Rather, the State contended that in *Peraza I* this court improperly placed the burden on it, rather than on Peraza, to prove he "had not been prejudiced by the denial of his motion for a continuance." *See id.* ¶¶ 2, 51. The supreme court accordingly granted certiorari on the issue of whether this court "erred in assigning [the State] the burden of demonstrating that [Peraza] was not prejudiced by

---

1. As noted in our initial decision, Peraza also moved this court for a rule 23B remand "for entry of findings of fact" necessary to the determination of his ineffective assistance of counsel claim. *See* Utah R. App. P. 23B(a). Because, as we explain below, we vacate Peraza's convictions and remand for a new trial on other grounds, we do not address Peraza's rule 23B motion or his claims that his counsel performed ineffectively.

2. For a full recitation of the factual background, see *State v. Alonzo Peraza*, 2020 UT 48, ¶¶ 5–25, 469 P.3d 1023, and *State v. Peraza*, 2018 UT App 68, ¶¶ 3–22, 427 P.3d 276.

the district court's denial of his motion for continuance." It concluded this court in *Peraza I* erred "in shifting the burden to the State to disprove prejudice" associated with the district court's denial of Peraza's continuance request. *Id.* ¶¶ 3, 51–60 & n.10. Determining that Peraza requested the continuance under the common law, the court explained that "[w]hen a defendant moves for a continuance under the common law, it is the defendant's burden to prove that a denial of the motion would be prejudicial," meaning that "it was Peraza's burden to prove prejudice." *Id.* ¶¶ 57–59. At the parties' request, the court remanded the case to us to decide the prejudice issue by applying the correct standard, as well as any remaining claims. *Id.* ¶¶ 4, 60, 63 & n.10.[3]

¶4 A district court's decision to grant or deny a continuance is discretionary, and we will not reverse such a decision "absent a clear abuse of that discretion." *Mackin v. State*, 2016 UT 47, ¶ 33, 387 P.3d 986 (quotation simplified). "A trial court abuses its discretion when it denies a continuance and the resulting prejudice affects the substantial rights of the defendant, such that a review of the record persuades the court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *Peraza II*, 2020 UT 48, ¶ 58 (quotation simplified). "In general, when a party unsuccessfully requests a continuance to procure a witness . . . pursuant to the court's inherent authority to manage the case, the movant must prove prejudice on appeal." *Id.*; *see also id.* ¶ 59 ("When a defendant moves for a continuance under the common law, it is the defendant's burden to prove that a denial of the motion would

---

3. In *Peraza II*, the supreme court also concluded that this court erred by concluding Expert's testimony was inadmissible. *Peraza II*, 2020 UT 48, ¶¶ 3–4, 33–50, 62–63. But that issue is not on remand to this court, *see id.* ¶¶ 62–63, and we therefore do not address it further.

be prejudicial."). Here, it is therefore Peraza's burden to demonstrate he was prejudiced by the court's failure to grant his requested continuance. We conclude he has met his burden.

¶5      During a pretrial hearing twelve days before trial, in response to Peraza's objection to allowing Expert to testify, the State asserted it intended to call Expert "only to rebut any argument from Peraza that [Child] was not credible because her testimony had changed over time and she had recanted the allegations on at least one occasion," clarifying that Expert "would testify that children might not make a full disclosure initially, and that it's a process." *Id.* ¶ 15 (quotation simplified). When Peraza requested a continuance later that day, he explained to the court he had discovered that the effigy-doll therapy Child underwent after the alleged abuse was a type "that could give grounds for the recantation of the recantation" and "might have led to the allegations becoming much more violent and much more pronounced as the years have gone on." Peraza explained that he believed having an expert explore those issues "might give a foundation for the defense" and "might lead to credible evidence that would [lead] a jury to believe that maybe these allegations are not true." Peraza accordingly requested the continuance to secure a defense expert. The district court denied Peraza's request.

¶6      At trial, because there was no physical evidence suggesting the abuse occurred, the case ultimately depended on the jury's assessment of Child's credibility; indeed, Child's credibility was the major issue at trial. Child testified to the abuse she contended Peraza had perpetrated upon her. But importantly, Child's credibility was significantly impeached during trial. For example, during the defense's cross-examination of Child, defense counsel's lines of questioning highlighted that Child recanted the abuse allegations to her mother and to a private investigator during an interview, and that her allegations of the kinds of abuse she

experienced were inconsistent over time. Child's mother also testified that she did not believe Child's allegations and had determined Child fabricated them. Specifically, Child's mother testified that Child recanted the allegations to her; that Child had a general history involving fabrication, particularly regarding conduct with boys; and that, in her view, Child's behavior during the relevant time was normal and did not suggest Child had been abused. Finally, the private investigator to whom Child recanted her allegations also testified, confirming that Child had recanted her allegations against Peraza "numerous times" during the interview and, in his view, her recantation statements were voluntarily made.

¶7     In response, the State called Expert as a rebuttal witness, and Expert's testimony focused on the issues of recantation and delayed or gradual disclosures in child sexual abuse victims. Expert testified that recanting is "not unheard of" in child sexual abuse victims and happens in "between four percent to 20 percent of cases." Expert also testified that just "because a child recants does not mean [the abuse] did not occur," and she explained there are various reasons a child may recant when the abuse did occur, such as "feeling pressure from family members" or that the victims have seen negative repercussions flowing from the allegations. Additionally, Expert testified it is generally understood "that the majority of people who have been sexually abused as a child delay disclosure" and that there are also several reasons why a child sexual abuse victim would only gradually disclose the abuse over time. Defense counsel cross-examined Expert, but the defense offered no expert witness to rebut Expert's opinions.

¶8     In these circumstances, we agree with Peraza's contention that he was prejudiced by the district court's denial of his motion to continue. We acknowledge defense counsel presented the private investigator as a fact witness to testify about Child's recantations and otherwise highlighted the inconsistencies in

Child's testimony. Defense counsel also secured some concessions from Expert. Nevertheless, in our view, Expert's testimony on the issues of recantation and delayed or gradual disclosure had the clear effect of rehabilitating Child's credibility, and without the opportunity to present a defense rebuttal expert, Peraza was handicapped in presenting his defense.

¶9     Expert's testimony was aimed at bolstering Child's credibility by providing the jury with a basis upon which it could conclude there was no credibility issue associated with Child's recantations and the progression of her reporting. *See State v. Iorg*, 801 P.2d 938, 941–42 (Utah Ct. App. 1990) (concluding, in a case that "hinged on credibility," with "[n]o physical evidence corroborat[ing] [the complainant's] allegations," that the challenged testimony was prejudicial where it "was clearly calculated to bolster [the complainant's] believability by assuring the jury no credibility problem was presented by the delay in [the complainant's] reporting the incident"). But if the continuance had been granted, Peraza could have secured an expert witness to directly rebut Expert's testimony on the recantation and disclosure issues. Specifically, a defense expert could have testified that Child's therapy treatment both influenced her trial recantation of her previous recantations and could have led to Child's abuse allegations becoming "more violent and much more pronounced" over time. Such testimony would have permitted the jury an opportunity to weigh Expert's testimony against testimony of arguably similar weight by a similar witness and, by extension, would have provided the jury a basis from which to discount Expert's opinions on the recantation and disclosure issues associated with Child's testimony.

¶10     Further, we also agree with Peraza that the rehabilitative effect of Expert's unrebutted testimony is amplified in light of the evidentiary picture presented during trial. As discussed

above, the case hinged on whether the jury believed Child's allegations of abuse, and the evidence against Peraza was not overwhelming. *See generally State v. Dick*, 2012 UT App 161, ¶¶ 9–13, 280 P.3d 445 (evaluating the prejudice to the defendant from the failure of a witness to testify to refute a rebuttal witness's testimony by looking to the evidence of guilt against the defendant). In this respect, Expert's testimony powerfully suggested to the jury it was more reasonable to view the evidence of Peraza's guilt, and specifically Child's factual allegations, as truthful. *Cf. State v. King*, 2010 UT App 396, ¶ 46, 248 P.3d 984 ("When Utah appellate courts reverse for improper bolstering, they usually do so not only where a case hinges on an alleged victim's credibility and there is no physical evidence, but also where the bolstering was done by an expert witness." (quotation simplified)).

¶11 In short, we are persuaded the district court's continuance denial was prejudicial because it affected Peraza's substantial rights by hampering his ability to put forward his defense. *See generally Peraza II*, 2020 UT 48, ¶ 58. Given the import of Expert's testimony in light of the evidentiary picture, we conclude that if the continuance had been granted, there is a reasonable likelihood of a more favorable outcome for Peraza. *See Iorg*, 801 P.2d at 941–42; *see generally Peraza II*, 2020 UT 48, ¶ 58.

¶12 Accordingly, we vacate Peraza's convictions and remand to the district court for further proceedings consistent with this opinion, including potentially a new trial.

———